Judge Pryor, Judge Newsom, and I want to welcome you to the fourth and final day of our sitting here in Atlanta. It's been a pleasure to be here. Hopefully you're familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close. So please begin to wrap up. If we take you beyond the red light, then just keep on going. With that, we'll start with our first case today, number 24-11794, United States v. Darius Hudson. Mr. Wise. Mr. Wise, we know your court appointed for Mr. Hudson, so on his behalf and on ours, we want to thank you very much for undertaking the appointment. We really, really do appreciate it. Thank you, Your Honor. And my name is Jervis Wise, and I represent Darius Hudson, Your Honor. And as the court is well aware, we've raised three issues in the brief, and I would like to begin, if it would please the court, with the first issue that was raised. And that was the district court's restriction on the cross-examination of three alleged co-conspirators who testified in Mr. Hudson's trial. The three co-conspirators who testified were absolutely critical to the government's case. The government never learned of Darius Hudson until they began proffering after they had all been indicted, or actually one pled to an information, but after they were all charged. Mr. Hudson did not really fit the mold of any of these other alleged co-conspirators. He was a generation older. He only really had a connection to one of them. He was not involved in the many acts that these other alleged co-conspirators were carrying out earlier on in their course of crimes. Based on that, the government's case really rested on their testimony. And when each of the three testified, the district court limited the cross-examination into the potential sentences they faced to only allow me to ask them if they faced significant or substantial sentences. And to be sure, each one of them did, but the problem with the restriction is those words can have very different meanings for different people. Each one of those three alleged co-conspirators faced at least life in prison plus additional time. And none had been sentenced. They all had... Were any of them facing minimum mandatory sentences? Yes, Your Honor. Every one of them was facing a minimum mandatory sentence under 924. Of what type? Each was facing, and some were negotiated out in plea agreements, but each was facing at least a 924C of 7 or 10 years minimum mandatory. Consecutive to whatever the underlying sentence would have been if convicted on the Hobbs Act robberies. Yes, Your Honor. The Hobbs Act robberies did not have a minimum mandatory, right? That's correct, yes. They had a potential maximum sentence, but not a minimum mandatory. That's correct. Okay. Yes. And that was another limitation that was placed. I wasn't allowed to get into the fact that they were facing actually consecutive mandatory sentences on the 924C convictions, or I believe there was a 924J in the picture as well. Why do you think it would have mattered to the jury whether you say they're facing substantial sentences as opposed to it was life or it was this number of years? The reason, Your Honor, I believe is that substantial and significant can have very different meanings. For most people, a year in jail or a year in prison is significant. It's substantial. For those of us in the criminal world, it's not. Life is certainly substantial. But for many of them, that can mean different things. And again, for most people— Well, I understand that, but the point is that they're cooperating. They're testifying to try to avoid a prison sentence, a substantial one. Of course. And I think that— And doesn't that point get across once they know that there's a substantial sentence? The point does, but I believe the degree of the time hanging over their heads does not and the significance of— may not have as much motivation to fabricate for someone who's facing life in prison. And the problem was actually exacerbated to some extent when one of the alleged co-conspirators, I believe it was Mr. Butler, basically blurted out that he had a seven-year minimum mandatory sentence on one of the charges. The problem with that is that was actually the least severe of the many penalties each of them was facing. So given the restriction and given the jury heard the seven years come out, which was not prompted by any questions, now they're thinking, well, they must be facing seven years. That must be the significant sentence. But in reality, that was actually the least severe of the many penalties they were all facing. Again, every one of them potentially faced up to life. How many of them had the so-called standard cooperation language in the plea agreements? So at least two— Well, at the time of trial, at least two did. We found out later that the third actually did as well, but it was—that provision of his plea agreement had been sealed. That didn't come out, and I don't believe that was for any—I think it was inadvertent that that didn't— that the fact that he had that sealed provision didn't come out during trial. But in reality, all three had that, had the standard, as used in the Middle District of Florida, the standard cooperation agreement in their plea agreements. So each of the three had that provision, saying if you provide assistance, and we, the government, believes it's substantial assistance, we'll consider filing a 5K. Now, obviously, that gives them motivation, and I believe I was able to get into some of the fact that the government really made the ultimate decision. But without knowing how much time was hanging over these various defendant's heads, that can have very different meanings. All right. Can we talk about the jury instruction on interstate commerce? Yes, Your Honor. And the— That's the one issue that troubles me most. Okay. And, Your Honor, our argument with respect to that is that essentially— and I recognize that it was a correct statement of law as read to the jury. The problem with it as it was worded is it basically negated any finding of the Commerce Clause for the jury to make. Basically, the jury's being told, if you believe these facts as we've alleged, this factual predicate, you don't even have to make a finding of the Commerce Clause element. And I don't believe that's what Taylor, the Supreme Court case, stood for, or even really the Gibbs opinion, the unpublished opinion that this Court had issued. The instruction in Gibbs was very different from the instruction that was actually given in this case, and the instruction as quoted in the opinion was that, as a matter of law, the marijuana market and proceeds from the marijuana market affect interstate commerce. I believe that is more along the lines of really a permissive presumption that's being read to the jury. So does Taylor say, though, in order to obtain a conviction under the Hobbs Act for the robbery or attempted robbery of a drug dealer, it is enough the defendant knowingly stole or attempted to steal drugs or drug proceeds? I believe it does, yes. It is enough? I mean, like, that sounds like— I mean, why couldn't you just read that statement to the jury and be like, have at it? Well, and I believe the problem was the way it was worded in this particular case. And, again, if it were similar to the Gibbs instruction that was given, where basically the jury is being told that, but you still have to make the finding, the way the wording of the instruction was in this particular case, I believe it basically tells the jury you don't even have to consider Commerce Clause if you find these facts. Your argument is basically that the instruction directed a verdict on that element of the offense. Basically, yes. I believe it was the equivalent of a mandatory presumption, the way it was worded. And one thing that Taylor also emphasized, though, is that it's— You could have phrased it in a way that was not mandatory. So you could have said the robbery of marijuana or of a cocaine dealer may affect interstate commerce, and at least the jury would know that theoretically they could based upon and then decide based upon the proof. But I've never seen an instruction like this in all my years in the federal system. I have not either, Your Honor. I couldn't find a case. I couldn't find a case on it. I couldn't find a jury instruction on it. And it seems to basically tell the jury. I mean, it is a correct statement of law, but it's a correct statement of law on a sufficiency point. Yes. That if the government proves that you robbed a marijuana or a cocaine dealer, the government has satisfied the effect interstate commerce element. But that doesn't mean you—I'm concerned by the instruction here. Yes, Your Honor, and I believe it would have taken away a JOA argument that I would not have really been able to make. But I think the problem was with the instruction, it takes away the jury's obligation to make that finding under the Commerce Clause element. And one thing that Taylor added in the holding is that it simply said, its holding does not render this provision of the Hobbs Act superfluous. And I think that's really what remains, and that was really the problem with the instruction that was given is that it essentially did. It rendered the Commerce Clause element toothless, and the jury was left without a need to make that finding based on that instruction. You can't tell a jury, for example, in a fraud prosecution that X is material as a matter of law, that a misrepresentation is material. You can't take the materiality away in that sort of presumptive way. You may be able to guide the jury to understand that a statement about this sort of issue can be material, but you've got to be very careful when you word a jury instruction in mandatory terms. An element of an offense, it seems to me. I agree, Your Honor, and I believe that's essentially what this instruction did. Can I ask you just to follow up? Could you instruct the jury that a certain fact is material as a matter of law if the Supreme Court had held that that fact is material as a matter of law? I mean, and isn't that what Taylor is, that the Supreme Court said that— or you can tell me if you don't think this is what Taylor said, but the Interstate Commerce Clause as a matter of law is satisfied if the government proves that you robbed or attempted to rob a drug dealer. I believe that is essentially what Taylor said. I don't think I understand, then. I mean, it's weird and unconventional, but I don't really think I understand, then, how it is that that, the instruction here, deprived the jury of some fact-finding role when the Supreme Court has said, like, there is no interstate commerce fact-finding role so long as the government proves that you tried to rob a drug dealer. Well, and that's—I believe that there still has to be the fact-finding. Now, as a matter of law, and again, if I were to make a JOA argument that that element wasn't proven, then Taylor clearly stands in contrast to that. I guess the question I'm asking is this. Isn't the only fact-finding that the Supreme Court has required in light of Taylor that you tried to rob a drug dealer? If you find that fact, everything else follows as a matter of law. Am I wrong about that? I don't—I believe the jury still must make the finding that the Commerce Clause element was effective. Just explain to me, like, why that is post-Taylor. Why is that still a fact that isn't enveloped within the holding of Taylor? Well, it's still a material element of the charge. And Taylor, if that was the Supreme Court's belief that there's no longer a need for the jury to make that finding if you find there was an attempt to rob a drug dealer, then I believe that's something the Supreme Court may have said, but they didn't go that far in Taylor. And I believe there's still—and again, they also added this doesn't render the commerce element toothless. And I believe that is really leaving it—leaving intact the requirement that the jury must make that finding. I mean, if you take that statement in Taylor broadly, you can give a jury instruction on a Hobbs Act charge, on a Hobbs Act robbery charge, without telling the jury that affecting interstate commerce is an element of the offense. I believe so. That doesn't seem quite right to me, but maybe I'm mistaken. I believe it's problematic. It would take away a material element of the charge. Okay. You've saved your time for rebuttal. Thank you very much, Mr. White. Thank you, sir. Good morning. Good morning. May it please the Court. Karen Hotman for the United States. Your Honors, I'm going to jump right into the instruction and then save a little time, if I may, at the end for any questions you have about the Sixth Amendment issue, unless you direct otherwise. It seems here that we have a problem that Your Honor has identified with a missing instruction that was never given or discussed. And we, therefore, have a problem with preservation of error from the get-go. What do you mean, missing instruction that was never given? Your Honor is talking about the finding of fact of targeting a drug dealer. Your Honor, Judge Newsom, is talking about the finding of affecting commerce, which is the elemental jurisdictional fact that the instruction was given on. And I'd like to read, Your Honor, two colloquies from the District Court that laid that first instruction to rest so that I do not believe this Court needs to worry about whether the jury had to find the fact of targeting the drug dealer and whether that had anything to do with the final instruction. During the very first conversation about this, the District Court asked Defense Counsel specifically, excuse me, I'm sorry, whether Defense Counsel was challenging the fact of the robbery or whether Defense Counsel was challenging the fact of affecting commerce when challenging the instruction. And that's at 406 at 13. The Court asked specifically. Defense Counsel said, I am challenging the affecting commerce under Taylor. And all discussion after that went from there. When the Court gave its final instruction under Taylor, the Court went, read Taylor again, came back in, and gave this final instruction according to the words in Taylor that Judge Newsom, I think that you just recited as well. She asked Defense Counsel if Defense Counsel had any issue with that instruction as worded. Defense Counsel responded, I have an issue with giving the instruction but not as worded. So I think when discussing whether something was removed from the jury, those two facts set the stage. He objected to the instruction. He objected to the instruction. And he said it takes the issue away from the jury. Now, that may be right or may not be right, but I don't think there's a preservation issue here. Well, Your Honor, when we're talking about whether this is a presumption of fact and whether the jury has been asked to find something or has been told that it's finding something or is told that it should give a directed verdict, I believe what Your Honor was pointing out was the issue was whether it needed to find the fact of targeting the drug dealer. No. Okay. Could Your Honor explain why the… Tell me what the elements are for a Hobzack robbery in your view. The Hobzack robbery as instructed and correctly… No, no, no, no. Oh, no. Forget the instructions here. Just tell me as a matter of black letter federal law, what are the elements of a Hobzack robbery? A robbery as defined under the Act that affects commerce as defined under the Act. So the affecting commerce is an element of the offense, is it not? Yes, Your Honor, and that's what Taylor said. Taylor's a sufficiency case. It says as a matter of law, if you present this evidence, you have satisfied the interstate commerce element. Correct. That doesn't mean you get to take away the affecting commerce element from a jury in all cases in the future involving the robbery of a drug dealer. But this instruction, Your Honor, did not tell the jury not to find something or take away anything from it. It simply gave the legal conclusion that the Supreme Court said was correct, that if you find the targeting of a drug dealer, that will affect commerce as a matter of law. This is a jurisdictional element, and frankly, the jury isn't instructed on… But think of this. If you rob a drug dealer who's not involved in selling drugs, is that a Hobzack robbery? A drug dealer who's not involved in selling drugs? Yeah. You rob – he's a drug dealer by trade. A commerce participant. Yes, but when you rob him, he's at a park walking his dog, having nothing to do with his drug trade. And he has no drugs on him. You rob him because he's a drug dealer and because he is a rival to you in the drug market. But when you rob him, all you do is steal the $10 of cash he has on him. But he's not dealing in drugs at that moment. He's not – he doesn't have any drugs. He's not doing anything like that. You've robbed a drug dealer. Have you affected interstate commerce? According to Taylor, you certainly have because you have targeted him. That's exactly what Taylor says. In Taylor, the defendant was convicted of Hobzack robbery. They targeted the drug dealer for drugs and drug proceeds. Right. That's not the case here. You attack him because he's a rival dealer and you want to do damage to him. Your Honor, there is plenty of evidence in the record, and that's how the case was tried. No, no, no. In my hypothetical, you're not targeting him because of his drugs. You're targeting because of who he is. Then the defendant in that case certainly could ask for an instruction saying you need to find that you are targeting a drug dealer because that is the instruction that would allow Taylor to kick in and the interstate commerce element. Can you give me any example? The coffin case. Anywhere in the world where a judge takes away an element of a criminal offense from a jury based upon a legal ruling on sufficiency by the Supreme Court on that element. Your Honor, in Gibbs v. King, this court, unpublished, approved the same instruction based on Taylor. But this is the problem because Taylor is unique. Taylor is dealing with a jurisdictional element. Taylor is dealing with effect on interstate commerce. But it's an element that the jury has to find. The jury was told it had to find that again and again. And then the court says the robbery of marijuana or cocaine dealers affects interstate commerce. And that's what Taylor said. Basically telling them what the answer was. Once they find the fact of a robbery, they necessarily find affecting interstate commerce. That is correct under Taylor as a matter of law. The jury doesn't have to find that. What don't they have to find? I'm sorry. That it affects interstate commerce. They were told that they have to find beyond a reasonable doubt the following facts. Interstate commerce. And then you're telling them what they have to find affects interstate commerce. You're telling me that a jury can't? You're telling me that a jury in every case involving the robbery of a drug dealer must find affecting interstate commerce as a matter of fact, as a matter of proof. It can't say, no, not in this case. The drug dealer had, he was selling marijuana joints once a month. We don't think that affects interstate commerce in this case. A jury is precluded from making that finding? First of all, Your Honor, this instruction did not preclude the jury. It said that it was sufficient and that this is interstate commerce under Hobbs. It didn't say anything about sufficiency. It said it satisfies the element, yes. It doesn't say that either. It says the robbery of marijuana or cocaine dealers affects interstate commerce. Yes, and as Taylor said— What is a jury going to do when it reads that and it says, okay, we have to find that this affects interstate commerce, and now we have this instruction that says, oh, this affects interstate commerce? It's a definitional instruction just like the other instruction that they were given about interstate commerce, which is commerce between states. So they are being given the definitional law. Your Honor, the instruction certainly did not prevent the jury, first of all, from nullifying, but also from not finding beyond a reasonable doubt. They were told, you are to find beyond a reasonable doubt the following things. One of those things was affecting interstate commerce. They then had to find for them interstate commerce. They then were told in that instruction, if you find that they targeted that this was a robbery of a drug dealer, then that is an effect on interstate commerce for purposes of the Hobbs Act, and that's absolutely true. That is a pure legal maxim taken right from Taylor itself. It did not remove from the jury anything, but further gave them the law on how they could find this. It would be as if it would be as if. This is not in the pattern jury instructions in our circuit. Absolutely not. Absolutely not. It's not in the pattern instructions, as far as I know, of any other circuit in the country. Correct. This is very new and based on Taylor because once Taylor came out, it became very, very clear how we could establish a commerce nexus with drug dealers. Again, the drug dealer is your honor and your honor's hypothetical. The drug dealer in the park is still a commerce participant. I don't want to get back to that so much, but just as a person standing. Doesn't Taylor, didn't the Supreme Court say in Taylor this follows from race? Correct. Whether race is a good thing or a bad thing. I think it's a bad thing, but whether race is a good thing or a bad thing, the court in Taylor said this follows from race. Race said when you're dealing with a closed market, that this poor old woman in California can't grow a pot plant in the back of her yard. She's a participant. Correct, because this is a jurisdictional element and it is a matter of law whether it affects commerce because we need to determine that to determine whether Congress even had authority to pass the statute. But it can't be a matter of law if it's a matter for the jury. The jury finds whether beyond a reasonable doubt interstate commerce was affected or commerce within the jurisdiction of the United States was affected. That's what the jury finds, that fact, the effect. But you're telling them what the effect was in a jury instruction. No, your honor. The jury instruction is saying if this fact, this evidentiary fact occurs, that satisfies beyond a reasonable doubt effect on interstate commerce. Just as Taylor said, because that is a sufficiency, that is a sufficiency determination. But they are not being told, they are not being removed, nothing is being removed from their purview. They still must find whether this is targeting a drug dealer. They still must find whether this affects commerce. They still must find whether it affects commerce beyond a reasonable doubt. What they are being given is the legal link from Taylor, which is if the government proves beyond a reasonable doubt that a robber targeted a marijuana dealer's drugs or illegal proceeds, the government has proved beyond a reasonable doubt that commerce over which the United States has jurisdiction was affected. Because as a matter of law, the robbery of the drug dealer affects interstate commerce. Whether Raich was correct or not, we have a domino effect of commerce clause decisions, and that's why it was an 8-to-1 decision, but Justice Thomas did not like Taylor because he felt that this was expanding Congress's commerce clause power too much. It had nothing to do with whether this was correct as a matter of law. All right. Can we move to the impeachment issue on the co-conspirators? Certainly, Your Honor. But I would love to invite more questions on the fact that we have two facts being found and neither was removed from the jury. We have a problem here for the Sixth Amendment issue. I believe that my brother started by saying that this was a restriction on cross-examination, and indeed this was a restriction, not exclusion, which is important because this throws us into abusive discretion both evidentiarily and under the Sixth Amendment. You don't get abusive discretion review under the Sixth Amendment. You get it on the evidentiary point. Your Honor, in Mills v. Singletary, the court said that the court's discretion is only bound under the Sixth Amendment if you are not excluding by a particular standard. If a defendant's—I'm sorry. I completely understand the district court's decision to not admit to plea agreements because they were very lengthy. They had all sorts of clauses. They dealt with specific charges, promises, guidelines, et cetera. It would be confusing and very difficult for the jury to comprehend. I get that, and so I don't think that, from my perspective, I don't think that's an abusive discretion. Again, in over 20 years on the federal bench, I have never seen a district judge preclude cross-examination of a cooperating witness based on the statutory periods of confinement that he or she was facing when charged. That's not a guideline issue like, oh, do you know that under Section 3C 2.2 you're going to get an enhancement for this and there's an aggravator here and a mitigating there and the judge can vary up or down. I understand excluding or prohibiting examination about guideline issues, but I've never seen a case where a person isn't allowed to be asked on the charge against you in the indictment, you are facing a 20-year maximum sentence, are you not? Yes, I am. And then you go from there and you're hoping to get better treatment. Your Honor, the difference here is that asking the specific question about the number of mandatory minimum years and consecutive and these precise minimum mandatories and precise maximum would identify immediately exactly what Mr. Hudson himself was facing. And my answer is, so what? The government chose its cooperators. That doesn't mean that the government's choice gets to restrict the level of cross-examination. And I think Mr. Wise made a good point that whatever is substantial to one person may not be substantial to another, to a person, to a lay person on the street. The possibility of serving 30 days in jail is horrendous and substantial. For those of us who practice in the criminal world, 20 years starts seeming really substantial. Life seems really, really, really substantial. Eight years mandatory seems substantial. And the jury heard none of that. Your Honor, I counter that with what the jury did here, which was the expectation of each witness. And I would argue that they were actually given something by the words substantial and significant. What do those words mean to you? Your Honor, in the concurrence in Russian. No, no, no. Don't. I don't want to talk about cases. I want to know what you think substantial means. Substantial and significant means more than a little. It means an extra step above the incentive. But that's the – they were given – go ahead. No, no, no. I don't want to stop you. Go ahead. What the jury did hear for every single witness was that there was a, quote, quid pro quo, where that's how it was presented in the plea agreement, that there was a speculation that the government would be providing a benefit for their testimony. And that benefit, by the way, was simple consideration in the standard cooperation provisions, which are in each of these. What the jury did hear was that in exchange for that benefit – excuse me, in exchange for the testimony, each of the witnesses was not charged with or had dropped particular counts. They also heard that there was a mandatory minimum for each of the 924C counts. But they didn't hear what those were. They heard that's 7-year, and they could have extrapolated from that. But the point is that they – Two years – we have mandatory minimum sentences of two years in the federal system for aggravated identity theft. That's very different than 7. It's very different than 15. It's very different than 20. So Your Honor is concentrating on the mandatory minimum and not the maximum. No. I'm concentrating on both of them. You are not giving the jury a full picture of what this person is facing and what this person is expecting in cooperation based on his testimony. And the expectation was the focus of Frushen in both the majority and concurrence. What these witnesses believed or expected, that was fully brought out through the substantial and significant, through questions about, so your fate is in the prosecutor's hands. So the judge cannot do this unless you testify. The judge cannot pierce these mandatory minimums. This was extensively crossed examined on. Let me give you another hypothetical. The plea agreement says you are facing a charge that has with it a 20-year mandatory minimum because of, on a drug charge, because of a prior or prior qualifying convictions. So your 10 to 40 range would go to 20 to 40. So you're facing 20 years minimum mandatory in that. The government also charges you with a phone count. So you have a maximum sentence. I forget what the phone count maximum is now, but somewhere in the three to five-year range, I think. And the plea agreement says if you testify truthfully and the government believes your testimony, in exchange for that, it will drop the drug charge that brings with it the 20-year mandatory minimum sentence and will just leave you with the phone charge that leaves you with a five-year maximum sentence. If that's the scenario, is the jury entitled to know the particulars of the numbers? They certainly are not under 401 and 403. The particulars of the numbers are going to line up exactly with the defendant who is on trial. And under the Sixth Amendment. You're making it difficult. I'm trying to let you speak, but you have to let me speak too. In my hypothetical, there's no defendant with the same charges. So I'm asking you abstractly, in my hypothetical, does the defense get to cross-examine into the numbers? Your Honor, I'm quite willing to say that the defense would have an opportunity to inquire into those numbers if that affects not at all the 401 and 403, and if that would affect that not allowing that means that the jury did not have facts sufficient to find and evaluate the credibility of the witness and allow counsel to establish a record from which he could properly argue why the witness is less than reliable. So I don't know, in that hypothetical, if the jury was told the same things they were here, if they were using the witness's own subjective evaluation of that as substantial and significant, as what they hoped to get, as whether they were telling the truth, as whether they were speculating or not, as whether they had actually been promised anything. And if all of that lined up exactly here and all of that lined up with no extra information about the defendant, then it sounds like the numbers would probably be relevant and they might even be not only within the discretion but outside of the court's discretion to exclude them. All right. Thank you very much. And leaving off the issue that was just being addressed, the cross-examination issue. What about her point that, and the district court's point, that allowing cross-examination into the numbers, the statutory numbers, would have paralleled what Mr. Hudson was facing, and that's generally something that a jury is not permitted to know. It is. But that's also, and in Russian, the court discussed how it has to be a balancing test and it has to happen on a case-by-case basis. In Russian, the circumstances were much different because there was a potential for jury nullification because they were dealing with prison guards who were the defendants and alleged victims who were inmates. Maybe a jury would. Here, I think jury nullification was of remote, at best, concern. We're talking about alleged robberies of drug dealers. I don't think the jury was looking at a reason to nullify any alleged act. Can I ask you just a blocking and tackling question about this issue? You mentioned in your opening both an evidentiary issue and a confrontation clause issue. Yes. In the government's brief, it says you didn't raise a confrontation clause issue below, and because you haven't filed a reply brief, I have no idea if you have a response to that. Yes, Your Honor, and I regret that I did not file a reply brief. I apologize for that. But I did not use the word Sixth Amendment in the objections below. Did you use confrontation? I did not use the word confrontation either, but I think my arguments clearly subsumed the Sixth Amendment issue. I was arguing it's absolutely critical for us to bring these facts out in front of the jury, that it goes to the witness's bias and motivation to fabricate. And I think to anyone looking, it was clear. My argument is I'm being unduly restricted in cross-examination, not simply a four or three issue. It's that I can't preserve my client's Sixth Amendment right to bring out these facts. But, I mean, the purpose, I guess, of the plain error doctrine is that it's just sort of unfair to district courts to hold them in error for something they weren't told that they needed to assess. That's true, and I don't think— and the court spent quite a bit of time below on this issue, and we litigated it to some extent. I went on to proffer from each one of these witnesses, so I think it was clear it was not simply a four or three issue. The heart of the issue was really the Sixth Amendment right to cross-examination. And I guess you—I mean, you obviously know the record much better than I do, so feel free to kind of guide me. So even if you didn't use the term Sixth Amendment or confrontation, did the district court in its colloquy with you? How did the district court manifest its understanding that, oh, we're talking about the Confrontation Clause? I think that it was in the court's discussion that, well, you can get into— here are the limitations. You can get into it to this extent. I don't—as I recall, I don't believe the court specifically used the words or the phrase Sixth Amendment either. But I think that it was certainly in the court's mind and the Assistant U.S. Attorney's mind that that's really what the heart of this issue was, and it wasn't simply a four or three issue. And I think, again, it goes really to this balancing. And in this particular case, it was absolutely critical, as I'd argue below, that the jury hear these things. To the extent there was any concern, and going back to Your Honor's question about how do we deal with it, the jury is instructed there not to consider sentencing. And there could have even been a heavier instruction on that issue. But there has to be balancing with the risk of— if there's a risk of jury multiplication or whatever prejudice may come from the jury putting two and two together and realizing, well, Mr. Hudson must be facing these same penalties. But that has to give way to Mr. Hudson's right to bring out these facts in front of the jury and to allow the jury to consider those facts. And I think that's really what the jury instruction would address that, and there's no reason in this particular situation especially that the instruction would not be followed. Going back briefly to the second issue, the jury instruction issue, I think—and one thing Your Honor brought up that I had frankly not thought about in the past, but the way this instruction was worded, that robbery of a drug dealer affects interstate commerce, it dawned on me it doesn't even say knowing robbery of a drug dealer or robbery of a known drug dealer. So it really makes it a strict liability issue in this particular situation. And that, again, is one reason why I think that the instruction given here is much different than the one at issue in Gibbs where the Court of Maryland instructed the jury that the marijuana market affects interstate commerce. That is potentially problematic as well, but I think that is much— the instruction given in this case went much further than that and specifically said robbery of a drug dealer affects interstate commerce. And I see my time has come to a close. Okay. Thank you both very much. Thank you. Thank you.